831 A.2d 93

**BETH TFILOH CONGREGATION OF BALTIMORE CITY, INC.**

v.

**GLYNDON COMMUNITY ASSOCIATION, INC.**

**No. 1705, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

Aug. 28, 2003.

G. Scott Barhight (Dino C. La Fiandra, Whiteford, Taylor & Preston, L.L.C., on brief), Towson, for appellant.

Gary R. Jones (Baxter, Baker, Sidle, Conn & Jones, P.A., on brief), Baltimore, for appellee.

Argued before SALMON, SONNER, and EYLER, DEBORAH S., JJ.

SALMON, J.

Appellant, Beth Tfiloh Congregation, Inc., of Baltimore City,[1] makes two primary arguments in this appeal. First, it claims that the Circuit Court for Baltimore County erred when it ruled that the Baltimore County Board of Appeals lacked jurisdiction to hear the appeal that it filed and, second, that the Board of Appeals' decision to grant it an exemption provided for by section 26–171 of the Development Regulations of the Baltimore County Code ("BCC") (1988) was correct as a matter of law. Appellee, the Glyndon Community Association, Inc., a Baltimore County neighborhood community group, disagrees with the first of appellant's contentions. It

---

1. Despite the name, the synagogue is now located in Baltimore County.

also disagrees with the second contention, although in a much more equivocal fashion.

## I. *BACKGROUND REGARDING CERTAIN BALTIMORE COUNTY ZONING PROCEDURES*

Those in Baltimore County who propose to develop property ordinarily must submit development plans, which are scrutinized in accordance with a "Development Process" that is spelled out in BCC section 26–201 *et seq.* The Development Process requires the developer to fulfill numerous requirements, including preparation of a concept plan, attendance at an initial meeting with certain county agencies (Concept Plan Conference), a community input meeting, a second meeting with county agencies (Development Plan Conference), and a Hearing Officer's Hearing at which the Hearing Officer may, at his or her option, impose conditions that must be met in order to secure plan approval. *See* BCC §§ 26–201—26–205.

There are, however, nineteen enumerated grounds upon which the developer may qualify for an exemption from the Development Process. *See* BCC § 26–171. Qualification for an exemption is important because an exemption allows the developer to avoid the numerous and sometimes onerous requirements of the Development Process. Examples of categories that are exempt from the Development Process under BCC section 26–171 include applicants who propose to develop a "lot of record," subdivide land into three or fewer lots, or development of minor commercial structures.

Baltimore County adopted a Development Management Policy Manual (the "Manual") on July 1, 1993, that, among other things, governs the processing of plans such as those presented by appellant. The Manual creates an interagency committee, the Development Review Committee ("DRC"), whose task it is, upon request by a developer, (1) to evaluate plans to determine what laws and processes must be followed in order to secure plan approval, or (2) to consider the proposed project to determine if it is entitled to an exemption from the

development review and approval process. Under policies 1b and 1c of the Manual, the DRC's review is to be performed at the earliest stage of the development approval process.

## II. *THE SUBJECT CASE*

Appellant operates a school and a synagogue in Baltimore County. It submitted development plans to the Baltimore County Department of Permits and Development Management ("PDM"), in which it proposed building a new two-story school building and a 1,500 seat synagogue with associated parking lot at a site located at 407 Central Avenue in Glyndon, Maryland.

Appellant applied to the PDM for an exemption allowed by BCC section 26–171(a)(2). In its exemption request, appellant pointed out that the proposed development site was a "lot of record," and therefore its development plan was exempted from the "Development Review and Approval Process" outlined in BCC sections 26–201 through 26–220.

The PDM referred appellant's proposal and exemption request to the DRC, which, after a review of the plans, recommended that the PDM deny the exemption. The PDM accepted the DRC's recommendation. On January 4, 2001, the Director of the PDM notified appellant of the denial.

Appellant appealed the PDM's decision to the Baltimore County Board of Appeals (the "Board"), which took testimony on December 4, 2001. At the hearing, appellee contended that the Board had no jurisdiction to hear an appeal from the denial of an exemption. The Board ruled that it did have jurisdiction and proceeded to overturn the PDM's decision and grant the exemption. In reaching the decision, the Board concluded that appellant's property met the definition of a "lot of record" and therefore appellant was entitled to the exemption provided for in BCC section 26–171(a)(2).

Appellee filed in the Circuit Court for Baltimore County a petition for judicial review of the Board's decision. It alleged that the PDM's decision to deny the exemption was not an

appealable event and therefore the Board lacked subject matter jurisdiction to make the decision.

The circuit court agreed with appellee. Relying primarily on our decision in *Meadows of Greenspring Homeowners Ass'n, Inc. v. Foxleigh Enters., Inc.*, 133 Md.App. 510, 758 A.2d 611 (2000) ("*Foxleigh* "), the circuit court held that the PDM's denial of the exemption was not an

operative event which would determine in this case whether appellant's proposed plan would be granted a license or permit, and did not determine the conditions or scope of that license or permit.

Therefore, according to the circuit court, appellant could not appeal from the PDM's decision to deny the exemption.

### III. *THE PARTIES' CONTENTIONS*

Baltimore County is a charter county. Article 25A, section 5(U), of the Maryland Annotated Code (1957, 2001 Repl.Vol.), gives charter counties power to create "a county board of appeals." Article 25A, section 5(U), reads,

(U) *County Board of Appeals*

To enact local laws providing (1) for the establishment of a county board of appeals whose members shall be appointed by the county council; . . . and (4) for the decision by the board on petition by any interested person and after notice and opportunity for hearing and on the basis of the record before the board, of such of the following matters arising (either originally or on review of the action of an administrative officer or agency) under any law, ordinance, or regulation of, or subject to amendment or repeal by, the county council, as shall be specified from time to time by such local laws enacted under this subsection: An application for a zoning variation or exception of amendment of a zoning ordinance map; *the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or any adjudicatory order;* and the assessment of any special benefit tax: Pro-

vided, that upon any decision by the county board of appeals it shall file an opinion which shall include a statement of the facts found and the grounds for its decision. Any person aggrieved by the decision of the board and a party to the proceeding before it may appeal to the circuit court for the county which shall have power to affirm the decision of the board, or if such decision is not in accordance with law, to modify or reverse such decision, with or without remanding the case for rehearing as justice may require. Any party to the proceeding in the circuit court aggrieved by the decision of the court may appeal from the decision to the Court of Special Appeals in the same manner as provided for in all civil cases.

(Emphasis added.)

Baltimore County's Charter (the "Charter") created a Board of Appeals. Article VI, section 602(d), of the Charter, in pertinent part, reads:

*Appeals from executive, administrative and adjudicatory orders.* The county board of appeals shall hear and decide appeals from all other administrative and adjudicatory orders as may from time to time be provided by [a]rticle 25A of the Annotated Code of Maryland (1957 Edition), as amended, or by legislative act of the county council not inconsistent therewith.

Appellant stresses that (1) section 602(d) of the Charter granted the Board the same broad jurisdictional authority allowed by article 25A, section 5(U), and (2) section 5(U) grants a right of appeal to the Board upon the "denial" of any "exemption." Therefore, appellant argues, the PDM's denial of its application for a BCC section 26–171 exemption qualified as an appealable event.

Appellant, relying upon language in *United Parcel Service v. People's Counsel,* 336 Md. 569, 583–84, 650 A.2d 226 (1994) ("*UPS* "), argues:

[F]unctionally, PDM's decision is one which finally decides if the exemption will be granted. The decision is a final act, and thus qualifies as an "operative event" under *UPS.*

Appellant further contends that the Board correctly applied the relevant law and that the record developed before the Board contained unrebutted evidence that supported the Board's decision to grant the exemption.

Appellee agrees that section 602(d) of the Charter *does* grant the Board the right to hear appeals from the denial of an exemption. Nevertheless, appellee argues that the appeal cannot be heard by the Board until the development process has been completed. In other words, appellee's position is that, even if the PDM wrongfully denies an exemption that would have allowed the developer to avoid the numerous steps in the "Development Process," the developer must nevertheless complete that process before seeking review of the denial. According to appellee, the circuit court properly construed the applicable Maryland law to preclude the Board from entertaining appellant's appeal because the PDM's January 4, 2001, decision was not an "operative event."

Appellee phrases its argument as follows,

[The PDM Director's letter denying the exemption did] not make any decision and is not an order. It [did] not issue or modify any license, permit, or approval. Instead, it merely inform[ed] Beth Tfiloh that in order for its plan to be approved, it must provide more information and proceed through the entire development review process ... [and] by ordering that it advance through the development process, ... [the] letter [denying the exemption did] not constitute an operative event, and therefore, is not a final, appealable action.

Appellee also argues that, even if the Board had jurisdiction to hear the appeal, it erred by granting the requested exemption. This argument is made even though appellee does not dispute (1) that the Board had before it substantial evidence from which it could find that the property that appellant sought to develop was "a lot of record" or (2) that the owner of "a lot of record" is entitled to an exemption from the "Development Process." Nevertheless, appellee contends that this denial of the exemption was justified because there

was a great deal of "community interest" (read controversy) concerning appellant's proposed development plan. This is important, according to appellee, because the DRC has a "longstanding policy" of denying exemptions requests when development proposals are met with a "measurable degree of community interest." Appellee argues,

It is well settled that an agency's interpretation of its own administrative regulation is of controlling weight unless it is plainly erroneous or inconsistent with the regulation. [citing *Ideal Fed. Savings Bank v. Murphy*, 339 Md. 446, 461, 663 A.2d 1272 (1995); *Morris v. Prince George's County*, 319 Md. 597, 614, 573 A.2d 1346 (1990)].

## IV. ANALYSIS

### A.

### Did the Board have jurisdiction to hear appellant's appeal of the PDM's decision?

BCC section 26–132 reads,

(a) Any person or persons, jointly or severally, or any taxpayer aggrieved or feeling aggrieved by any *decision* or *order* of the zoning commissioner or the director of zoning administration and development management shall have the right to appeal therefrom to the county board of appeals.

\* \* \*

Notice of such appeals shall be filed, in writing, with the director within thirty (30) days from the date of any final order appealed, together with the required fee as provided in the zoning regulations.

(Emphasis added.)

Because both parties agree that the Board has jurisdiction to hear appeals from the denial of an exemption, the question becomes: *When* is the Board allowed to exercise that jurisdiction? Appellee, relying primarily on *Foxleigh, supra,* and *UPS, supra,* contends that such jurisdiction does not vest until the Development Process has been completed.

The *UPS* case involved a zoning dispute concerning property in Baltimore County upon which UPS wished to build a large parcel distribution facility. *Id.* at 571–72, 650 A.2d 226. To build the facility, UPS needed a building permit and to obtain the permit, it was required to submit an application to the Zoning Commissioner, who was empowered to determine whether the application was in proper form and whether the proposed use complied with the zoning regulations then in effect. *Id.* at 572, 650 A.2d 226. If the Zoning Commissioner "approve[d] the application, and all other requirements [were] met, the Building Engineer [could] then issue a building permit." *Id.* UPS applied for a building permit, and on July 3, 1986, the permit was approved by the Zoning Commissioner. *Id.* at 573, 650 A.2d 226. The building engineer issued a permit to UPS about six weeks later. *Id.*

On January 11, 1987, after UPS had commenced construction, Paul Hupfer, a citizen who lived near the construction site, wrote to the Zoning Commissioner complaining that the facility UPS was building required a special exception, which UPS had neglected to obtain. *Id.* The Zoning Commissioner responded to Hupfer in a letter dated January 17, 1987, in which he advised that a building permit had already been issued and that a special exception was not required. *Id.* at 573–74, 650 A.2d 226.

Hupfer, joined by two citizens' associations, filed an appeal to the Board of Appeals from the Zoning Commissioner's "letter decision" dated January 17, 1987. *Id.* at 574, 650 A.2d 226. UPS contested the Board's jurisdiction to hear the appeal, contending that the appeal was untimely because it was not filed within thirty days of the issuance of the permit. *Id.* The Board agreed with the protestants that it had jurisdiction but went on to rule that no special exception was required. *Id.* at 575, 650 A.2d 226. The circuit court agreed that the Board had jurisdiction to decide the issue but reversed the Board's decision that no special exception was needed. *Id.*

In *UPS*, the Court of Appeals considered the issue of whether the January 17, 1987, letter from the Zoning Commissioner constituted an "appealable event" within the meaning of article 25A, section 5(U), which had been "incorporated by reference into [section] 602(d) of the Baltimore County Charter." *Id.* at 581–82, 650 A.2d 226. The Court held that the words "issuance, renewal, denial, revocation, suspension, annulment, or modification," as used in article 25, section 5(U), "obviously refer to an operative event which determines whether the applicant will have a license or permit, and the conditions or scope of the license or permit." *Id.* at 583–84, 650 A.2d 226. The Court went on to say,

> The plain import of the words would not include a statement simply confirming that a license or permit was issued or denied in the past or defending a past issuance or denial of a license or permit. In the context, the phrase "approval ... or other form of permission," on which the protestants place so much reliance, seems to have been designed simply to encompass all forms of licensing regardless of what the particular license or permit may be called. Nevertheless, the appealable event is the issuance, renewal, revocation, etc. of the license or permit. In the present case, this appealable event occurred in 1986 when the application for a building permit was approved and the permit was issued.
>
> If Art. 25A, § 5(U), were construed to grant an appeal to a board of appeals from an administrative official's reaffirmation or statement that a license or permit had been properly issued or properly denied in the past, an applicant or a protestant could circumvent entirely the statutory time limits for taking appeals. In *Nat'l Institutes Health Federal Credit Union v. Hawk*, 47 Md.App. 189, 195, 422 A.2d 55, 58–59 (1980), *cert. denied*, 289 Md. 738 (1981), the Court of Special Appeals, quoting the hearing examiner, explained:
>
> " 'The "decision" which is the subject of [the] Appeals ... is not a final administrative decision, order or determination. It is at most a reiteration or reaffirmation of the final administrative decision or order of the department granting the original Use and Occupancy Certificate.... If this were

not the case an inequitable, if not chaotic, condition would exist. All that an appellant would be required to do to preserve a continuing right of appeal would be to maintain a continuing stream of correspondence, dialogue, and requests ... with appropriate departmental authorities even on the most minute issues of contention with the ability to pursue a myriad of appeals ad infinitum.' "

*Id.* at 584–85, 650 A.2d 226 (footnote omitted).

Appellee utilizes the above language and argues,

The appealability of an action pursuant to the Annotated Code of Maryland, [a]rticle 25A, § 5(U)[,] turns on the occurrence of an "operative event." And "operative event" determines whether the applicant will have a license or permit [or exemption]. An "operative event" also determines the conditions or scope of the license or permit [or exemption]. *United Parcel,* 336 Md. at 583–84, 650 A.2d 226.

(Bracketed material in original.)

■ We agree with appellee that whether an operative event has occurred depends upon whether the applicant will have "a license ... permit ... [or exemption]." But in the case at hand, the PDM *did* decide whether the applicant would have an exemption from the Development Process. As for appellee's reliance upon *UPS* for the proposition that to be an "operative event" the action of the agency must "also determine the condition or scope of the license or permit [or exemption]," that reliance is misplaced. The *UPS* Court did not address the rule applicable when an administrative agency denies an exemption. And, in any event, when an exemption is denied, the "scope" of a denial is never an issue.

The trial court, unlike appellee,[2] relied upon the exact language set forth in the following sentence in the *UPS*

---

**2.** Appellee, unlike the trial court, includes bracketed material when it quotes from the *UPS* case. Moreover, unlike the trial judge, appellee agrees that the Board can hear an appeal from the denial of an

decision, which was also quoted in the *Foxleigh* decision: "The words [as used in article 25A, section 5(U)] 'issuance, renewal, denials, revocation, suspension, annulment, or modification' obviously refer to an operative event that determines whether the applicant will have a license or permit, and the conditions or scope of that license or permit." *Id.* at 583–84, 650 A.2d 226. Taken literally, this sentence would be dispositive of this case—and the disposition would be in favor of appellee. But the sentence must be read in context. In *UPS*, the Court was not dealing with the denial of an exemption and article 25, section 5(U), excluding all unnecessary words, unequivocally gives a party the right to appeal to the Board from "the . . . denial . . . of any license, permit, approval, *exemption* . . . or other form of permission or any adjudicatory order." (Emphasis added.) Read in context, it is obvious that the Board has the power to hear appeals from a decision denying an exemption even if the decision appealed does not involve a determination of whether someone "will have a license or permit." In sum, we are convinced the language from the *UPS* case relied upon by the trial court is taken out of context. Our conviction in this regard is bolstered by other language in the *UPS* case.

In *UPS*, the Court also said,

Like other "time for appeal" provisions, BCC § 26–132 neither contains the word "accrues" nor speaks in terms of accrual. Moreover, there is no language in § 26–132 which could furnish the basis for a flexible doctrine like the discovery rule. Rather, the time for appeal begins to run from a fixed date. *In mandatory language, the Baltimore County statute states that a notice of appeal "shall" be filed within thirty days of the decision from which the appeal is taken.* Under language like that set forth in BCC § 26–132, this Court has consistently held that, where the notice of appeal was not filed within the prescribed period *after the final decision from which the appeal was taken, the appel-*

---

exemption. But, as mentioned *supra*, it claims the appeal was filed too soon.

*late tribunal had no authority to decide the case on its merits. See, e.g., Dabrowski v. Dondalski,* 320 Md. 392, 397–398, 578 A.2d 211, 214–215 (1990); *Walbert v. Walbert,* 310 Md. 657, 662, 531 A.2d 291, 293 (1987), and cases there cited.

*Id.* at 580, 650 A.2d 226 (emphasis added).

In the case at hand, the appeal to the Board was taken within thirty days of the decision by the PDM to deny the exemption. And, as shown above, BCC section 26–132 of the Code was interpreted in the *UPS* case as meaning that a party has only "thirty days of the *decision* from which the appeal [is] taken" to file an appeal. *Id.* (emphasis added). If appellant had waited—as appellee says it should have—until after the Development Process had been completed, the appeal would have been filed far too late because it would have been filed more than thirty days after the decision to deny the exemption was made.[3]

Appellee also places great reliance on *Foxleigh, supra,* which, in turn, placed heavy reliance on the *UPS* case. In order to understand *Foxleigh,* it is important to understand certain aspects of Baltimore County zoning procedures. Appellant, in its brief, gives a good summary of those procedures, *viz:*

a) *Requests for Amendments to Previously Approved Plans*

If a request for amendment to a previously approved plan is received, the DRC [Development Review Committee] first evaluates which development law applies. Baltimore County Code § 26–169 and § 26–211, "grandfather," for the benefit of the developer, certain projects which have been approved pursuant to an earlier development process than the one which is currently in effect. Under the regulations presently in effect, which went into effect in 1992, development approval requires a community input meeting and a

---

**3.** It plainly would have taken more than thirty days after notification of the denial of the exemption request for appellant to have negotiated the numerous hurdles in the Development Process.

hearing officer's hearing. Baltimore County Code, 1988 ed., § 26–201, *et seq.* This is referred to as the "Development Process." Between 1892 and 1992 there was a process in effect known as the "CRG Process." The CRG Process involved a public meeting by county agencies and ultimate approval or disapproval of the plan by the Directors of the Department of Public Works and the Office of Planning. Baltimore County Code, 1978 ed., 1988 supp., Public Works and the Office of Planning. Baltimore County Code, 1978 ed., 1988 supp., § 22–52 *et seq.* Prior to 1982, there was only a subdivision review process. The subdivision process, often referred to as the "JSPC Process," ["Joint Subdivision Planning Committee"] involved a planning board approval of a subdivision plat. Baltimore County Code, 1978 ed., § 22–40, *et seq.*

Subdivision approval is required for plat recordation, which, in turn, is required to legally transfer title of real property.... Development approval, by CRG Process or Development Process, as the case may be, is required for "development," which is currently defined generally as building or the preparation of land for building. Baltimore County Code, 1978 ed., 1988/89 Supp....

Pursuant to the grandfathering provisions of Baltimore County Code § 26–109 and § 26–211, with regard to development approval, a property acquired a right to further development approval in accordance with those procedures which governed the first development (or subdivision) approval thereon. This is beneficial to an owner of property with a previously approved subdivision or development because it is generally accepted that the current Development Process is more onerous than the earlier CRG Process or the JSPC Process.

Accordingly, if a developer seeks development approval for a tract or parcel in the first instance, i.e., before there has been any previous subdivision or development on the property, then clearly, neither § 26–169 nor § 26–211 grandfathers the property into any prior development approval process and the current Development Process gov-

erns. In such cases the developer is bound to proceed in accordance with the development approval procedures presently provided for in § 26–201, *et seq.*, unless the developer is otherwise exempt from these requirements under § 26–171.... Equally clear is that if a developer approaches the DRC with a change or amendment to a plan which was first approved by the CRG Process or by the JSPC Process, then the DRC must find that the appropriate earlier process applies....

If the DRC determines that the proposed project is an amendment to a plan previously approved pursuant to an earlier process, i.e., the CRG Process or the JSPC Process, then the amendment is characterized as either a "refinement" or a "material amendment."

Refinements to CRG plans are processed administratively.... These plans are circulated to the Department of Public Works and the Office of Planning, each of which must approve the refinement.... Ultimately, the Director of Public Works and the Director of Planning will approve the refined plan. Refinements to JSPC plans are processed administratively by the Director of Planning, pursuant to Baltimore County Code, 1968 ed., § 22–33.

Material amendments to CRG Plans require approval by the Director of Public Works and the Director of Planning, after a public meeting of the county agencies known as the CRG Meeting. Material amendments to a JSPC Plan would require approval by the Baltimore County Planning Board, after a public hearing.

When an applicant submits a request for amendment to a previously approved plan, the first issue the DRC must decide is what development law applies. If the DRC determines that the plan had been approved under one of the earlier processes, it then determines which process it was approved under; it next determines whether the proposed amendment is a material change to, or a refinement of, the existing approved plan.

In *Foxleigh,* the developer (Foxleigh Enterprises, Inc.) had a previous plan approved in 1983 by the County Review Group

("CRG"). 133 Md.App. at 512, 758 A.2d 611. About fifteen years later, in April 1998, the developer submitted to the DRC a proposed plan for development of the same property. *Id.* The developer sought the DRC's agreement "that the [proposed] plan constitutes a refinement to a previously approved CRG ... plan." *Id.* Various neighborhood property owners contended that Foxleigh's proposed plan was not a "refinement" to a previous plan and therefore "should be processed under the current development regulations by DRC review, not CRG review." *Id.*

The DRC held a public meeting after which Arnold Jablon, the Director of PDM, wrote a letter, which stated,

> *Pursuant to [a]rticle 25A, [s]ection 5(U) of the Annotated Code of Maryland, and as provided in [s]ection 602(d) of the Baltimore County Charter, and [s]ection 26–132 of the Baltimore County Code, this letter constitutes an administrative order and decision* on the request for issuance, renewal, or modification of a license, permit, approval, exemption, waiver or other form of permission you filed with this department. . . .
>
> The DRC has, in fact, met in an open meeting on April 27, 1998, and determined that your project is a material change to the CRG. Please submit new plans, so a new CRG can be scheduled. (Emphasis added.)

*Id.* at 513, 758 A.2d 611.

The neighboring property owners filed an appeal to the Board of Appeals from Mr. Jablon's decision. *Id.* Foxleigh filed a motion to dismiss the appeal, arguing that Jablon's letter was not a final administrative action from which an appeal could be taken. *Id.* at 513–14, 758 A.2d 611. The Board agreed with Foxleigh, saying,

> [T]he May 12, 1998 letter describes a CRG plan as opposed to a DRC plan. As a result, it is not governed by the DRC but the CRG per [s]ections 26–169 and 26–211 of the [Maryland Annotated] Code. As such, Mr. Jablon's role differs from that which he arguably may exercise under the DRC. The CRG process provides for an appeal at the time

the plan is approved, not at the juncture at which Developer [Foxleigh] is advised to submit a plan. That time had not yet occurred at the time of the instant appeal. The instant appeal thus is not ripe and does not constitute a final act from which an appeal lies.

*Id.* at 514, 758 A.2d 611.

A petition for judicial review was filed by the neighboring property owners, after which the Board's decision was affirmed. *Id.* On appeal to this Court, we addressed the issue of whether Mr. Jablon's letter advising that Foxleigh's plans would come under the less stringent CRG review rather than the far more onerous DRC review procedures was an administrative order that could be appealed to the Board. We said,

We find this case sufficiently analogous to *United Parcel.* Jablon's letter was not an "operative event" that determined that Foxleigh's proposed plan will be granted a license or permit, and did not determine the conditions or scope of that license or permit. Rather, Jablon's letter merely informed Foxleigh that the proposed plan must be reviewed by the CRG.

*Id.* at 516, 758 A.2d 611.

Later, we further explained,

*Appellants' argument fails to recognize that Jablon's letter does not make any decision and is not an order.* It does not issue or modify any license, permit, or approval. Jablon's letter only informs Foxleigh that the proposed plan is a material change from the previously approved plan and that, in order to be approved, new plans must be submitted for consideration. At the time of Jablon's letter and at the time this appeal was filed with the Board of Appeals, Foxleigh could have decided not to submit new plans. Or, if it submitted new plans, the CRG could have approved or disapproved them. Therefore, as the Board of Appeals concluded, the appeal was not ripe.

Furthermore, that Jablon's letter stated that it was an administrative order and decision does not automatically

make it an appealable decision. As this Court stated in *Art Wood* [*v. Wiseburg,* 88 Md.App. 723, 596 A.2d 712 (1991) ]:

Whether the CRG's action was authorized by the B.C.C. must be determined by the content or effect of that action rather than by the name or description given it by the CRG.... [The] question [of] whether a judgment, order, or decree is final and appealable is not determined by the name or description which the court below gives it, but is to be decided by the appellate court on a consideration of the essence of what is done thereby.

88 Md.App. at 732–33, 596 A.2d 712 (citations omitted).

*Foxleigh,* 133 Md.App. at 518–19, 758 A.2d 611 (emphasis added).

Appellee contends that this case is "similar" to *Foxleigh* because the letter to appellant advising that it was not entitled to an exemption "does not make any decision and is not an order." We disagree. While the letter from PDM, arguably, was not an "order," it clearly advised that a final "decision" had been made. *Foxleigh* is inapposite because it did not concern the denial of an exemption. This is of crucial importance because article 25A, section 5(U), allows the Board to hear appeals from the "denial ... of any exemption...." In contrast to the specific language in section 5(U) allowing an appeal to the Board from the denial of an exemption, nothing in section 5(U) allowed an appeal from the type of ruling sought to be reviewed in *Foxleigh.*

For the foregoing reasons, we agree with the Board and hold that it did have jurisdiction to hear appellant's appeal from the denial of the exemption.

## B.

### Was the Board's Decision to Grant the Exemption Supported by Substantial Evidence?

The circuit court did not address whether the Board's decision was supported by substantial evidence. The court's determination that the Board had no jurisdiction obviated its

need to do so. Even though the circuit court did not make that determination, we shall do so because the function of this Court, when reviewing an agency's decision, is essentially to repeat the task that was performed or should have been performed by the circuit court. *See Red Roof Inns, Inc. v. People's Counsel for Baltimore County,* 96 Md.App. 219, 224, 624 A.2d 1281 (1993).

In rendering its decision, the Board noted that the DRC Director "admitted [in his testimony] that the lot in question, upon which [appellant] sought [an] exemption, appeared to be a closed lot and therefore a lot of record as applied by the DRC with respect to § 26–171(a)(2)." The Board pointed out that BCC section 26–171 spells out, in no uncertain terms, when an applicant is entitled to an exemption, and nothing in that Code section suggests that an exemption can be denied if the requirements of BCC section 26–171 have been met. The Board concluded that because BCC section 26–171(a)(2) provides that an exemption *shall* be granted if the improvement is to be made on a lot of record, appellant was entitled to an exemption.

Appellant contends that the Board acted correctly in granting the exemption because

as a matter of fact, the Board accepted the testimony of Steven Warfield, [appellant's] engineer, and especially that of Donald Rascoe, the Chairman of the DRC, that the property is a "lot of record." This factual conclusion is amply supported by the uncontradicted testimony of Warfield and Rascoe.

According to appellant, upon a finding that the proposed development was to occur on a "lot of record," it was statutorily entitled to the exemption without further ado.

As mentioned *supra*, appellees do not dispute that the evidence presented to the Board shows that the property was a "lot of record," nor does appellee take issue with the fact that BCC section 26–171(a)(2) grants the developer the right to an exemption if the property is on a lot of record. Instead, appellee contends that the Board erred in granting the exemp-

tion because the decision "ignore[d] the DRC's internal, stated policy regarding the administration of exemption requests when proposals face a measurable degree of community interest." According to appellee, the Board erroneously overruled the agency's decision to deny the exemption in light of the measurable community interest in the proposal. To support its position, appellee directs our attention to provisions contained in an internal agency manual (the Development Management Policy Manual) and a portion of a related memorandum dated March 4, 1994.

■ Although we have considerable doubt that it is true, we shall assume, *arguendo,* that (1) both the PDM and DRC have a longstanding practice of denying valid exemption requests whenever there is "measurable degree of community interest" in the proposed development and (2) the Development Management Policy Manual can be correctly interpreted to mean that requests for exemption should be denied whenever there exists "measurable degree of community interest." Even with those assumptions, denial was improper because it is contrary to the plain meaning of BCC section 26–171(a)(2). *Atlantic, Gulf & Pac. v. State Dep't of Assessments & Taxation,* 252 Md. 173, 183, 249 A.2d 180 (1969)(Construction of a statute by an administrative agency administering the statute will be given no effect if the agency's construction is contrary to the statute's unambiguous meaning.).

BCC section 26–171 reads in relevant part:

(a) The following development is exempt from division 2 of this article....

(2) The building or preparation of land for building *on a lot of record* lawfully in effect at the time of the building or preparation of the land for building if the lot of record did not result from a subdivision of land exempt under section 26–170.

(Emphasis added.)

This section contains no requirement that community interest be considered in the granting of an exemption. Moreover, it is not contended that the exception ("if the lot of record did

not result from a subdivision of land exempt under BCC section 26–170") was applicable. Therefore, the Board's decision not to consider the PDM's internal policy was legally correct.

The Board's decision that appellant was entitled to an exemption should have been affirmed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED TO THE CIRCUIT COURT WITH INSTRUCTION TO AFFIRM THE DECISION OF THE BALTIMORE COUNTY BOARD OF APPEALS; COSTS TO BE PAID BY APPELLEE.**