*Imani Chiusano, et al. v. Two Farms, Inc.*, No. 653, Sept. Term, 2024. Opinion by Tang, J.

**ZONING AND PLANNING – PERMITS, CERTIFICATES, AND APPROVALS – PROCEEDINGS ON PERMITS, CERTIFICATES, OR APPROVALS – ADMINISTRATIVE REVIEW – IN GENERAL**

Administrative letter issued by the Director of the Baltimore County Department of Planning, which purported to approve the developer's proposed project's designation as a Planned Drive-In Cluster under § 101.1 of the Baltimore County Zoning Regulations, was not a final action from which an appeal to the Baltimore County Board of Appeals could be taken. The Director of Planning lacked the authority to determine whether the proposed project met the criteria for designation as a Planned Drive-In Cluster; there was more to do before the development plan could be approved when the letter was issued; and the purported designation of the proposed project as a Planned Drive-In Cluster was not made known to members of the public, including the aggrieved parties.

Circuit Court for Baltimore County
Case No. C-03-CV-23-002279

<u>REPORTED</u>

<u>IN THE APPELLATE COURT</u>

<u>OF MARYLAND</u>

No. 653

September Term, 2024
_____

IMANI CHIUSANO, *ET AL.*

v.

TWO FARMS, INC.
_____

Arthur,
Tang,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____
_____

Opinion by Tang, J.
_____

Filed: January 28, 2026

Pursuant to the Maryland Uniform Electronic Legal
Materials Act (§§ 10-1601 et seq. of the State
Government Article) this document is authentic.



Gregory Hilton, Clerk

This appeal arises from the approval of a development plan by Baltimore County in January 2021, which was subsequently granted by the Baltimore County Board of Appeals (the "Board"). The primary issue is whether a letter issued in October 2018 by the Director of the Baltimore County Department of Planning, which purported to approve the proposed project's designation as a Planned Drive-In Cluster under the Baltimore County Zoning Regulations ("BCZR"), is an appealable event. For the reasons explained below, we conclude that it was not.

## BACKGROUND

Two Farms, Inc. (the "Developer") seeks to develop a property located at 1721 Reisterstown Road owned by Pikesville Hospitality Investors, LLC. The property is at the intersection of Reisterstown Road and Interstate 695 in Pikesville, Baltimore County. The property consists of approximately 2.85 acres. Currently, the property includes a hotel and restaurant and is surrounded by other retail establishments. The Developer proposes to demolish the existing hotel building and build a gas station, a Royal Farms convenience store, and a full-service car wash.

The Developer applied for a limited exemption from certain review requirements in the Baltimore County Code (the "Code"), which would avoid the need to satisfy certain more onerous requirements of the development process, including the requirement to hold a public hearing. The Department of Permits, Approvals and Inspections ("Department of

PAI") approved the limited exemption under Code § 32-4-106(b)(8), and the development plan proceeded through the review process under the limited exemption.[1]

### *Planned Drive-In Cluster, Defined*

Generally, locations of fuel service stations on individual sites are permitted only by special exception.[2] BCZR § 405.2.B. However, the location of a fuel service station is permitted by right if it is integrated with and located in a Planned Drive-In Cluster. BCZR § 405.2.A.3.

On June 4, 2018, the Baltimore County Council enacted Bill 53-18, which redefined "Planned Drive-In Cluster" by amending BCZR § 101.1. Specifically, the bill expanded the definitional criteria. *See* Bill 53-18. The current version, which took effect July 16, 2018, sets forth two alternative definitions that may be satisfied to qualify:

> "DRIVE-IN CLUSTER, PLANNED" — An integral commercial development for which an overall plan has been approved by the Department of Planning and which meets the following criteria for Type 1 or Type 2:
>
> A. Type 1: Is under common ownership or control; is on a site at least three acres in net area; has at least 500 feet of lot frontage on arterial streets; and is devoted primarily to drive-in uses or other vehicle-oriented establishments, with vehicular access to any use in the development solely from service drives on the site.

---

[1] Under § 32-4-106(f)(1) of the Code, a decision or order of the Director of PAI regarding an application for a limited exemption from the development review and approval process may be appealed to the Board in accordance with Code § 32-3-401. The protestants did not appeal this decision to the Board, and thus, approval of the limited exemption is not an issue in this appeal.

[2] When a use is not permitted by right, an applicant may seek a "special exception," which refers to "a grant by the zoning administrative body pursuant to the existing provisions of the zoning law and subject to certain guides and standards, of a special use permitted under the provisions of the existing zoning law." *Tomlinson v. BKL York LLC*, 219 Md. App. 606, 610 n.2 (2014) (citation omitted).

B. Type 2: Is under common ownership or control; is on a site at least 2.5 acres in net area; has at least 250 feet of frontage on an arterial street; has vehicular access to an arterial street within 300 feet of the right-of-way of an interstate highway; and is devoted primarily to drive-in uses or other vehicle-oriented establishments, with vehicular access to any use in the development from service drives on the site.

BCZR § 101.1.[3]

The legislation also amended BCZR § 405.4.E.3 to provide that a full-service car wash is a use permitted by right (rather than requiring a special exception) in combination with a fuel service station if the project is in a Planned Drive-In Cluster. *See* Bill 53-18, Fiscal Note ("The bill also restates the current law that permits a full-service car wash as a use in combination with fuel service stations by special exception, except that the use is permitted by right if in a Planned Drive-In Cluster.").

***October 30, 2018 Letter Regarding Project's Planned Drive-In Cluster Designation***

On October 30, 2018, the Director of Planning, Andrea Van Arsdale, sent the Developer a letter stating that "Staff has reviewed your request for confirmation as a Planned Drive-In Cluster, Type 2 as defined . . . per Bill 53-18 recently enacting the Type 2 Drive-In Cluster." The Director stated, in relevant part:

The 1721 Reisterstown Road property meets the definitional criteria of [BCZR] Section 101 for Planned Drive-In Cluster, Type 2 as follows:

---

[3] Previously, the term "Drive-In Cluster, Planned" was defined under BCZR § 101.1 as "an integral commercial development for which an overall plan has been approved by the Department of Planning and which is under common ownership or control; is on a site at least three acres in net area; has at least 500 feet of lot frontage on arterial streets; and is devoted primarily to drive-in uses or other vehicle-oriented establishments, with vehicular access to any use in the development solely from service drives on the site." Bill 53-18 categorized this definition as "Type 1" and created a new set of alternative criteria under "Type 2."

- The 2.85 acre property is listed under common ownership and control of Pikesville Hospitality Investors LLC in Deed Liber 12826 at Folio 306;
- The property meets the acreage requirements of at least 2.5 acres in net area at 2.85 acres;
- Has frontage of 263' off of an arterial street, exceeding the 250' minimum requirement under the Type 2 definition;
- Has vehicular access to an arterial street within 300' of the right of way of an interstate highway, and
- Is devoted primarily to drive-in uses and other vehicle-oriented establishments with vehicular access to any use in the development from service drives within the site.

*The Director of Planning has determined that your request to designate 1721 Reisterstown Road as a Planned Drive-In Cluster, Type 2 is appropriate and approved.*

*Be advised that the above determination does not indicate Baltimore County Department of Planning approval for any future required waiver, variance relief, special hearing, development plan or building permit. You should contact the Bureau of Zoning Review to confirm whether the determination of a Planned Drive-In Cluster is within the spirit and intent of, or necessitates a change to, any existing zoning case rulings associated with the property. Also be advised that this development site is within the Pikesville Commercial Design Review Panel Review Area and as such will need to be presented to the Panel for review and approval.*

Please submit 3 copies of your plan to the Department of Planning for signature; with signature block included.

(Emphasis added.)

### *Approval of Development Plan*

The project was presented to the Baltimore County Design Review Panel. On October 28, 2020, the Design Review Panel issued a recommendation approving the project's design.

On November 13, 2020, the Director of Permits, Approvals and Inspections ("Director of PAI") issued a letter accepting the Design Review Panel's recommendation

4

and approving the project's design. *See* Code § 32-4-203(l) (requiring that when a hearing is not required, the Director of PAI "shall consider any recommendations of the [Design Review] Panel" and may impose such recommendation as a condition of plan approval or issuance of permit).

On January 25, 2021, the Director of PAI issued a letter approving the development plan.

### *Board of Appeals Proceedings*

On February 17, 2021, Afshin Attar and the Pikesville Communities Corporation filed an appeal with the Board, objecting to the approval of the development plan.[4] They claimed that the approved development plan was predicated on Bill 53-18, which changed the definition of a Planned Drive-In Cluster. They argued that Bill 53-18 is an illegal special law because its only practical effect is to benefit the Developer.[5] Even if the bill is not

---

[4] The People's Counsel for Baltimore County ("People's Counsel") filed a letter of appeal with the Board objecting to the approval of the development plan, but later withdrew its appeal. The two appeals were consolidated as CBA-21-017. The People's Counsel is appointed by the county executive and represents the interests of the public in general in zoning matters. Baltimore County Charter § 524.1(a).

[5] "A special law is one that relates to particular persons or things of a class, as distinguished from a general law which applies to all persons or things of a class." *Howard Cnty. v. McClain*, 254 Md. App. 190, 197 (2022) (citation omitted). "The implementation of special laws is prohibited under Article III, § 33 of the Maryland Constitution." *Id.* (explaining that the prohibition against special legislation is "to prevent one who has sufficient influence to secure legislation from getting an undue advantage over others")). "[A]lthough no appellate decision has clearly held that the special laws prohibition applies to charter counties or articulated a clear interpretive theory or mechanism by which it would apply, it seems clear that the appellate courts of Maryland now believe that it does[.]" Dan Friedman, *The Special Laws Prohibition, Maryland's Charter Counties, and the "Avoidance of Unthinkable Outcomes,"* 83 Md. L. Rev. Online 28, 33 (2023) (footnotes

5

illegal, they argued that the proposed development did not meet the definition of Planned Drive-In Cluster under BCZR § 101.1.

***Developer's Motion for Partial Dismissal***

On April 7, 2021, the Developer filed a Motion for Partial Dismissal with the Board, requesting that the scope of the Board hearing be limited to the January 2021 approval of the development plan and that the Board exclude arguments related to the October 2018 "approval" letter from the Director of Planning. In relevant part, the Developer argued that the protestants should have appealed within thirty days of the October 2018 letter, but did not. Accordingly, the protestants' attempt to litigate the designation of the proposed project as a Planned Drive-In Cluster was barred as a matter of law.

The protestants opposed the motion. They argued, in relevant part, that they had timely appealed the approval of the development plan and were permitted, as part of that appeal, to challenge the determination that the proposed project met the criteria for a Planned Drive-In Cluster. The protestants asserted that the October 2018 letter "did not authorize the developer to do anything" and that "[t]he developer could not proceed until it obtained an approved [development plan]."

The Board held a virtual hearing on the motion on January 25, 2022. At the hearing, the Developer reiterated the arguments in the motion, maintaining that the October 2018 letter was a final decision from which the protestants should have appealed, and that the approval contained therein was not subject to the current appeal.

---

omitted) (exploring the interpretive techniques that might support applying the special laws prohibition against the charter counties).

In response, the protestants argued that the October 2018 letter was not a final agency action because it left more for the agency to do; thus, they were not required to appeal within thirty days of the date on that letter. They further argued that, because the letter was not publicly available, they had no way of knowing when to appeal. They added that the Director of Planning had no authority to approve the designation of the proposed project as a Planned Drive-In Cluster under BCZR § 101.1. Accordingly, the protestants requested that the Board stay the matter and refer the question of whether the proposed project met the requirements for designation as a Planned Drive-In Cluster to an Administrative Law Judge ("ALJ") with the Office of Administrative Hearings (the "OAH").

### *Board's Order of Stay and Remand (April 13, 2022)*

On April 13, 2022, the Board issued an Order of Stay and Remand, staying the case and remanding it to the Director of PAI and the ALJ "to evaluate whether the proposed development meets the criteria" for a Planned Drive-In Cluster, Type 2.

On April 29, 2022, ALJ Paul Mayhew issued a letter indicating that it would not be appropriate for either an ALJ or the Director of PAI to issue "what would amount to an advisory opinion on the issue" of whether the proposed development qualified for designation as a Planned Drive-In Cluster under BCZR § 101.1.[6]

---

[6] ALJ Mayhew believed that:

Section 101.1 of the BCZR vests the [Department of Planning] with the sole authority to determine whether or not a development meets the definition of a "Drive-In Cluster, Planned." We further believe that the [Department of

### Board's Opinion Regarding Motion for Partial Dismissal (November 17, 2022)

On November 17, 2022, the Board granted the Developer's Motion for Partial Dismissal. The Board concluded, in relevant part, that the appeal of the October 2018 letter was not filed within thirty days. It explained that the protestants' appeal was filed on February 17, 2021, within thirty days of the approval of the development plan. However, it stated that no appeal had been filed within thirty days of the October 2018 letter approving the project as a Planned Drive-In Cluster, Type 2. Accordingly, the Board concluded that this "administrative decision[]" was "final" and it did "not have the authority to reverse or modify said decision[]." Thus, the Board set a "*de novo* hearing solely on the issue of the approval of the [development plan]."

### Hearing on the Merits of the Development Plan

On March 21 and 22, 2023, the Board held a hearing on the merits of approving the development plan. By this time, Pikesville Communities Corporation had dismissed its appeal, leaving Mr. Attar as the sole protestant. Mr. Attar did not contest the evidence regarding the approval of the development plan itself. Rather, he clarified that the basis of his challenge was that Bill 53-18's amendment to the definition of Planned Drive-In Cluster was illegal, independent from the October 2018 letter. To show that the bill was illegal, Mr. Attar had subpoenaed documents from the County, the Developer, and its counsel regarding the passage of Bill 53-18.

Planning's] approval or denial is then a final decision which must be appealed directly to the Board of Appeals for *de novo* review. Finally, we believe the Board has the sole authority and responsibility for conducting this review.

The Developer moved to quash the subpoenas directed to it and its counsel.[7] It maintained that the bill's legality was not subject to appeal, as the Board's November 2022 opinion and order had determined that the decision in the October 2018 letter was final and could not be revisited.

Mr. Attar responded that the Board's November 2022 opinion did not address his special law argument. He emphasized that his special law argument was relevant to the ultimate approval of the development plan, not merely the October 2018 letter that purportedly approved the designation of the proposed project as a Planned Drive-In Cluster. Accordingly, Mr. Attar contended that the argument was not time-barred on the ground that he had failed to appeal from the October 2018 letter.

The Board, however, disagreed, explaining that its November 2022 opinion had already implicitly found that the special law issue was not properly before it:

> [CHAIR]: . . . I am of the opinion that we should grant the Motions to Quash. That our prior opinion issued in November of 2022 does limit the case to a de novo hearing solely on the issue of the approval of the [development plan].
>
> I do think that whether or not it is explicitly stated in that written opinion the . . . additional parts of that opinion, read together in the context of the Motions that were being addressed, does indicate that we are, or have found that, the position that Bill 58-13 [*sic*] is an illegal special law is not before us and is not subject to appeal in this case.
>
> And so, for that reason, I think it's not relevant, or information seeking to establish that that Bill 58-13 [*sic*] is an illegal special law is not relevant. And so, I think that's the basis to deny a Motion to Quash seeking information that can, if the, if you all agree, is not relevant. So, that's my, my opinion on that particular issue. I would like to hear from the [other panel members].

---

[7] The County also filed its own motion to quash based on legislative immunity. The Board did not address that basis because it granted the motion to quash on other grounds, as explained below.

9

[FIRST PANEL MEMBER]: Well, I agree with you, [Chair]. The, you know, the, the whole planned drive-in cluster was, approval was predicated on 53-18. And obviously we ruled that the appeal was untimely, which it was.

So, if the appeal was timely, then I think we'd be in a whole different situation. I think all, you know, that it could be argued that that 53-18 was unconstitutional and then anything could flow from that. But, you know, it's, we're precluded from doing that because of the ruling.

[CHAIR]: Agree. [Second Panel Member]?

[SECOND PANEL MEMBER]: I agree also with both of you related to the Motions to Quash. The issue of, just, just to clarify one thing you said, Mr. Chairman. The issue is, of 53-18, is before us. It's just not relevant. I think we've decided it. I think this is not the proper forum to do that. We've already decided that 53-18, it's not, it's not applicable in us trying to decide that issue of whether it's a special law or not. Pretty straightforward to me. Thank you.

After deliberating, the Board granted the Motion to Quash "primarily on the . . . basis that it's the Board's view that its November 2022 opinion and order has . . . foreclosed this issue raised by [Mr. Attar] on appeal here that Bill 58-13 [*sic*] is an illegal special law." The Board reiterated throughout the hearing that its "interpretation of [its] own November 2022 opinion" was that the issue of Bill 53-18 "is no longer before us. It had been raised, it had been argued and it had been disposed of by the Board's November 2022 opinion, at least in the Board's view." Accordingly, the Board concluded that it would not be "making any decision on that[.]"

On the merits, the Developer presented evidence regarding the approval requirements for the development plan, which was largely uncontested. Mr. Attar presented evidence in the form of stipulations from himself, Imani Chiusano, and David Cho, who opposed the development plan.

On May 12, 2023, the Board issued an opinion with its decision regarding the approval of the development plan. The Board reiterated its earlier determination that the protestants failed to appeal timely from the October 2018 letter approving the proposed project as a Planned Drive-In Cluster, Type 2 under BCZR § 101.1. The Board "found that its previous determination regarding County Council Bill 53-18 precludes argument on this matter and that the subpoenas seek information not relevant to the merits of the case." The Board explained that it had "already found that the Planned Drive-In Cluster argument was the final say on that issue, immediately conveyed rights to the [Developer] (the proposed uses are now permitted by right on the property), and cannot be revisited years later by the Board."

As for the approval of the development plan, the Board stated that Mr. Attar "did little to contest the [development plan's] compliance with the County regulations." The Board noted that Mr. Attar's primary challenge to the plan was based on his argument that the special law was illegal. Having determined that the special law argument was precluded for the reasons stated above, the Board quashed the subpoenas and granted approval of the development plan. Ultimately, the Board granted the approval of the "Planned Drive-In Cluster/Limited Exception Development Plan."

### Judicial Review in the Circuit Court

On May 31, 2023, Mr. Attar, Ms. Chiusano, and Mr. Cho (collectively, the "appellants") filed a petition for judicial review of the Board's decision in the Circuit Court for Baltimore County (Case No. C-03-CV-23-002279). *See* Baltimore County Charter ("Charter") § 604 ("Within thirty days after any decision by the county board of appeals is

11

rendered, any party to the proceeding who is aggrieved thereby may appeal such decision to the circuit court of Baltimore County."). The Developer opposed the petition.

On May 8, 2024, after conducting a hearing, the court entered a judgment affirming the Board's Opinion and Order. Thereafter, the appellants noted this timely appeal.

## ISSUES PRESENTED

The appellants present the following issues, which we have reordered:

1. Whether the Board's determination that the Director of Planning's October 30, 2018 letter was a final, appealable order, and conveyed substantive rights to the [Developer], constituted legal error.

2. Whether the Board articulated its Opinion and Order in accordance with Maryland's jurisprudence as to why it rejected Citizen-Appellants' special law argument.

3. Whether the Board's lack of consideration of Citizen-Appellants' special law argument constituted legal error.

Resolution of this appeal centers on the first issue presented. In granting the Developer's motion for partial dismissal, the Board determined that it was precluded from considering the proposed project's designation as a Planned Drive-In Cluster and the legality of the bill that enabled such designation. The Board's basis for this conclusion was that the October 2018 letter—which purported to approve the proposed project as a Planned Drive-In Cluster under the new definition created by Bill 53-18 —was an appealable event, and the protestants failed to timely appeal from that determination. Thus, our discussion focuses on addressing the first issue—whether the October 2018 letter issued by the Director of Planning regarding the designation of the proposed project as a Planned Drive-In Cluster under BCZR § 101.1 constituted an appealable decision. We conclude that it did not.

12

For the reasons stated below, we reverse the circuit court's judgment and direct the court to order the Board to vacate the approval of the development plan and issue a limited remand for the Board to consider the challenges regarding the designation of the proposed project as a Planned Drive-In Cluster, including the legality of Bill 53-18. Based on this disposition, we need not address the remaining issues.

## STANDARD OF REVIEW

"When reviewing appeals from circuit court orders reviewing administrative agency actions, we review the decision of the agency, not the circuit court[.]" *Laurel Racing Ass'n, L.P. v. Anne Arundel Cnty.*, 233 Md. App. 311, 320 (2017); *Emps. Ret. Sys. of Balt. Cnty. v. Brown*, 186 Md. App. 293, 310 (2009) (noting that appellate review looks not at the circuit court action but through it). As we have explained:

> We review the agency's decision in the light most favorable to the agency because it is prima facie correct and entitled to a presumption of validity.
>
> The overarching goal of judicial review of agency decisions is to determine whether the agency's decision was made in accordance with the law or whether it is arbitrary, illegal, and capricious. With regard to the agency's factual findings, we do not disturb the agency's decision if those findings are supported by substantial evidence. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. We are not bound, however, to affirm those agency decisions based upon errors of law and may reverse administrative decisions containing such errors.

*Sugarloaf Citizens Ass'n v. Frederick Cnty. Bd. of Appeals*, 227 Md. App. 536, 546 (2016) (internal citations omitted) (internal quotation marks omitted).

13

The question of whether the October 2018 letter issued by the Director of Planning is an appealable event is a question of law, which we consider *de novo*. *See Chesapeake Bay Found., Inc. v. Creg Westport I, LLC*, 481 Md. 325, 336–37 (2022).

## DISCUSSION

"[T]he right of appeal is wholly statutory." *Hikmat v. Howard Cnty.*, 148 Md. App. 502, 515 (2002). "[W]here a specific remedy and procedure for appeal are provided by statute, they must scrupulously be followed." *Nat'l Inst. of Health Fed. Credit Union v. Hawk*, 47 Md. App. 189, 196 (1980).

Maryland delegates significant authority to local governments to regulate land use. *Cnty. Council of Prince George's Cnty. v. Zimmer Dev. Co.*, 444 Md. 490, 503 (2015). Section 10-305(b) of the Local Government Article ("LG") of the Annotated Code of Maryland, formerly Art. 25A, § 5(U), grants Charter counties, such as Baltimore County, the authority to create a board of appeals with the following jurisdiction:

> (b) The county board of appeals may have original jurisdiction or jurisdiction to review the action of an administrative officer or unit of county government over matters arising under any law, ordinance, or regulation of the county council that concerns:
>
> * * *
>
> (2) *the issuance, renewal, denial, revocation, suspension, annulment, or modification of any license, permit, approval, exemption, waiver, certificate, registration, or other form of permission or of any adjudicatory order[.]*

(Emphasis added.)

Pursuant to this grant of authority, § 601 of the Charter created a county board of appeals for Baltimore County, and § 602 established procedures for administering the

functions of the Board of Appeals. Section 602 states that the Board "shall have and may exercise the following functions and powers," including:

> (a) *Appeals from orders relating to zoning.* The county board of appeals shall have and exercise all the functions and duties relating to zoning described in Title 10 of the Local Government Article of the Annotated Code of Maryland as such functions and powers may be prescribed by legislative act of the county council. All references in law to the board of zoning appeals shall be construed to refer to the county board of appeals. In all cases, except those excluded by this Charter or by legislative act of the county council, the order of the county board of appeals shall be final unless an appeal is taken therefrom in the manner provided in Section 604 of this Article.
>
> \* \* \*
>
> (d) *Appeals from executive, administrative and adjudicatory orders.* The county board of appeals shall hear and decide appeals from all other administrative and adjudicatory orders as may from time to time be provided by Title 10 of the Local Government Article of the Annotated Code of Maryland, as amended, or by legislative act of the county council not inconsistent therewith.

Charter § 602 (legislative history omitted).

> With respect to zoning decisions, Code § 32-3-401 states in pertinent part:
>
> A person aggrieved or feeling aggrieved by a decision of the Zoning Commissioner or the Director of Permits, Approvals and Inspections may appeal the decision or order to the Board of Appeals.
>
> \* \* \*
>
> The appealing party shall . . . [f]ile notice of the appeal, in writing . . . within 30 days after the *final decision*[.]

Code § 32-3-401(a), (c) (emphasis added).

> Regarding the development review and approval process generally, Code § 32-4-281 states in pertinent part:
>
> A person aggrieved or feeling aggrieved by *final action* on a Development Plan may file a notice of appeal with the Board of Appeals and the Department of Permits, Approvals and Inspections within 30 days after the date of the final decision of the Hearing Officer.

15

Code § 32-4-281(b)(1) (emphasis added). In the context of the development review process, a "final action" means the approval or disapproval of a Development Plan. *See* Code § 32-4-101(t) ("'Final Action' on a Development Plan means (1) The approval of a Development Plan as submitted; (2) The approval of the Development Plan with conditions; or (3) the disapproval of a Development Plan by the Hearing Officer[.]").

The Rules of Practice and Procedure of the Board under both the BCZR and the Code state that all appeals to the Board "shall be made within thirty days from the date of the *final action* appealed, unless otherwise provided by the County Code." BCZR App'x B, Rule 3.c (emphasis added); Code App'x B, Rule 3.c (emphasis added).

## A.

### Parties' Contentions

The appellants contend that the October 2018 letter was not an appealable decision. According to the appellants, the final action that initiated the appeal period was the approval of the development plan on January 25, 2021, not the letter regarding the designation of the proposed project as a Planned Drive-In Cluster in October 2018.

They highlight that the Code does not provide a deadline for appealing a determination by the Director of Planning regarding the designation of the proposed project as a Planned Drive-In Cluster under BCZR § 101.1. This, they contend, is because nothing in the Code authorizes the Director of Planning to unilaterally determine whether a project meets the definition.

16

The appellants also contend the October 2018 letter was not an appealable decision because there was more to be done before the Department of PAI could approve the development plan. The appellants note that the letter itself indicates that additional steps would be required to obtain final approval of the development plan.

Moreover, the appellants argue that the October 2018 letter was not an appealable event because the designation of the proposed project as a Planned Drive-In Cluster was not accompanied by notice, opportunity for public comment, or public hearing. In other words, they say that there was no way for them to know that such a determination had been made to timely appeal.

The Developer responds that the October 2018 letter was a final decision subject to the thirty-day appeal deadline. It argues that the Charter permits the Board to hear appeals from administrative and adjudicatory orders, which encompasses the October 2018 letter. It also asserts that the Director of Planning did not unilaterally approve the proposed project as meeting the criteria of a Planned Drive-In Cluster. Instead, the Director signed the letter on behalf of the Department of Planning, which is authorized to administer the section of the zoning regulations under which the relevant definition fell. The Developer tacitly acknowledges the lack of public notice of the alleged approval in the October 2018 letter, but it minimizes its significance.

## Analysis

**1. The October 2018 Letter Was Not Appealable Because the Director of Planning Lacked the Authority to Determine that the Proposed Project Satisfied the Criteria of a "Drive-In Cluster, Planned" Under BCZR § 101.1.**

The Baltimore County Charter organizes various departments in the administrative services. Relevant here are the Department of Planning and the Department of PAI.[8] We look to the Charter and relevant Code provisions to determine each entity's and each director's role in this case. *See Montgomery Preservation, Inc. v. Montgomery Cnty. Plan. Bd. of Md.-Nat. Cap. Park & Plan. Comm'n*, 424 Md. 367, 372 (2012).

The Department of Planning has "the responsibility and duty of planning for Baltimore County," a task that includes "[a]dministering the zoning code." Charter § 522.1(a)(5). The Department is comprised of a director, a planning board, a zoning commissioner and a deputy zoning commissioner (now the OAH),[9] and People's Counsel. *See* Charter § 522; Code § 3-2-1201. The Department of Planning's specific duties include preparing and revising a master plan; preparing, recommending to the County Council, and administering a zoning map; preparing and recommending to the County Council rules and regulations governing the subdivision of land; and preparing and recommending to the

---

[8] The Department of Planning was formerly known as the Office of Planning and Zoning. Charter, Article V, Division 3, Subdivision 1, Editor's notes. The Department of PAI was formerly known as the Department of Permits and Development Management, Permits and Licenses. Code § 3-2-1101(c); *see also* BCZR § 500 n.1 (Editor's Note).

[9] Under Code § 3-12-104, "[a]ny reference to the Zoning Commissioner [or] the Deputy Zoning Commissioner . . . in the Charter, the Code, or the [BCZR] shall be deemed to be a reference to the Office [of Administrative Hearings]."

County Council zoning rules and regulations, which, together with the zoning map, constitute a zoning code. Charter § 522.1(a)(1)–(4).

The Director of Planning "shall administer the Department of Planning." Code § 3-2-1202(d). The powers of the Director of Planning (as opposed to the Department as a whole or to one of its other components) are specified throughout the Code. For example, in the zoning context, if a correction to a zoning map is needed, the "Director of Planning" investigates any alleged error in the zoning map and prepares a petition for correction, Code § 32-3-232(a), (b), and identifies the intended zoning classification and recommends a correction, Code § 32-3-234(b)(3), (4). The Director of Planning is also responsible for, *inter alia*, resolving complaints about errors in zoning maps, Code §§ 32-3-231 through 32-3-234; making recommendations on zoning variances, Code § 32-3-302(c); coordinating amendments to zoning reclassification petitions, Code § 32-3-513(b); and requiring that any additional items be included in development plans, Code § 32-4-224(d).

"The OAH is a quasi-judicial body comprised of administrative law judges [ALJs] who hear cases and issue decisions on a variety of matters, including, zoning, land use, and related topics." *Becker v. Falls Rd. Cmty. Ass'n*, 481 Md. 23, 32 n.3 (2022); *see* Code § 3-12-105. The OAH also has the authority, upon petition, to "[i]nterpret the zoning regulations" subject to a hearing. Code § 32-3-301(a)(2); *see* Code § 32-3-302; BCZR § 500.6 ("[T]he Zoning Commissioner shall have the power, upon notice to the parties in interest, to conduct hearings involving any . . . noncompliance with any zoning regulations, *or the proper interpretation thereof*, and to pass [their] order thereon, subject to the right

19

of appeal to the County Board of Appeals[.]" (emphasis added)). Thus, the OAH has the express statutory authority to "interpret" the BCZR, but the Director of Planning does not.

The Department of PAI is "responsible for the administration and enforcement of all laws and regulations relating to permits and licenses of all kinds[.]" Charter § 529. Its duties include "administer[ing] and enforc[ing]" "[a]ll laws and regulations associated with (i) [t]he development process; and (ii) [t]he permitting and licensing process[.]" Code § 3-2-1103(1). In addition, the Department of PAI reviews development plans for compliance with related laws, regulations, or policies. Code § 32-4-225(a)(1). The Director of PAI, who administers the Department of PAI, *see* Charter § 528, is responsible for "interpret[ing] *and* enforc[ing]" the BCZR "to insure that uses or buildings, including structures, landscaping, roads, and streets, conform to plans approved by the county." Code § 32-3-102 (emphasis added).

The Developer contends that the Department of Planning's duty to "administer[] the zoning code" under Charter § 522.1(a)(5) means that the Department of Planning, and by extension its Director, has the authority to interpret BCZR § 101.1 and determine if the proposed project meets the definition of a Planned Drive-In Cluster.

The provisions in the Charter and Code cited by the Developer do not support its assertion that the Department of Planning's duties to "[a]dminister[] the zoning code" confer on the Director of Planning the inherent authority to "interpret and enforce" the zoning regulations. "Administer" means "to manage or supervise the execution, use, or conduct of." *Administer*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/administer (last visited Dec. 18, 2025); *see Westminster Mgmt.,*

20

*LLC v. Smith*, 486 Md. 616, 644 (2024) ("When statutory terms are undefined, we often look to dictionary definitions as a starting point, to identify the 'ordinary and popular meaning' of the terms[.]" (citation omitted)). In contrast, "interpret" means "to explain or tell the meaning of." *Interpret*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/interpret (last visited Dec. 18, 2025). "Enforce" means "to give force to" and "to carry out effectively." *Enforce*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/enforce (last visited Dec. 18, 2025). Nothing in the Code grants the Director of Planning the authority to "interpret" the BCZR, including the provision defining Planned Drive-In Cluster under BCZR § 101.1.

As summarized *supra*, responsibility for interpreting the BCZR lies with either the Director of PAI, *see* Code § 32-3-102, or, upon petition, the zoning commissioner (i.e., an ALJ with the OAH), Code § 32-3-301(a)(2). To the extent that the Director of Planning is involved with individual zoning decisions, that responsibility is set forth explicitly, rather than with general language like "[a]dministering the zoning code." Charter § 522.1(a)(5). For example, Code § 32-3-302(c) establishes that, once the Department of PAI schedules a special hearing on a zoning issue, it "shall promptly forward a copy of the petition to the [Director of Planning] for consideration and a written report containing findings relating to planning factors."

The Developer argues that the plain language of the definition of Planned Drive-In Cluster unambiguously states that the Department of Planning, and by extension its Director, approves the designation. An application of the tenets of statutory interpretation,

21

however, does not support the Developer's contention. We begin with the plain language of "Drive-In Cluster, Planned":

> DRIVE-IN CLUSTER, PLANNED — An integral commercial development for which an *overall plan has been approved by the Department of Planning* and *which meets the following criteria* for Type 1 or Type 2 . . . .

BCZR § 101.1 (emphases added).

The definition contains two clauses that modify the phrase "[a]n integral commercial development." The first clause is "for which an overall plan has been approved by the Department of Planning[.]" The second clause is "and which meets the following criteria for Type 1 or Type 2[.]"

The placement of the phrase "approved by the Department of Planning" is part of the first clause but not the second. In other words, the first clause requires that the Department of Planning has approved the "overall plan" for an integral commercial development. However, the requirement that the plan be "approved by the Department of Planning" does not extend to the second clause, concerning whether the integral commercial development "meets" the "criteria for Type 1 or Type 2[.]"

If the County Council intended for the Department of Planning to determine whether an integral commercial development meets the criteria for Type 1 or Type 2, it could have easily explicitly stated so. To accept the Developer's interpretation that the above definition gives the Department of Planning or its director the authority to determine whether a proposed project meets Type 1 or Type 2 criteria would be inconsistent with the plain language of the BCZR and would undermine the distinct powers that the County Council gave the Director of PAI, the Director of Planning, and the OAH. *See also Comptroller of*

22

*Md. v. FC-Gen Operations Invs. LLC*, 482 Md. 343, 380 (2022) ("In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical, or incompatible with common sense." (quotation marks and citations omitted)).

Contrary to the Developer's assertion otherwise, the October 2018 letter stated that "[t]he *Director of Planning* has *determined* that your request to designate [the property] as a Planned Drive-In Cluster, Type 2 is appropriate and approved." (Emphasis added.) Based on the statutory interpretation above, we conclude that the Director of Planning did not have the authority to determine, deem appropriate, or approve whether the proposed project qualified as a Type 2 Planned Drive-In Cluster under BCZR § 101.1. Accordingly, the letter was ineffective in determining that the proposed project met the Type 2 Planned Drive-In Cluster criteria under BCZR § 101.1. Therefore, the Director of Planning's October 2018 letter was not an appealable decision. *Cf. Montgomery Preservation*, 424 Md. at 378 (holding that planning board's recommendation that county council deny historic designation was not an appealable final administrative decision because the applicable statute gave the council, and not the planning board, the power to approve amendments to the master plan).

**2. The Letter Was Not Appealable Because There Was More to Do Before the Development Plan Could Be Approved When the Letter Was Issued.**

Even if the Director of Planning *did* have the authority to determine whether the Developer's proposed project qualified for designation as a Planned Drive-In Cluster, we would still hold that the October 2018 letter was not a final appealable decision because at

23

the point the letter was issued, more remained to be done before the development plan could be approved.

Proposed developments in Baltimore County ordinarily must submit development plans in accordance with the "Development Review and Approval Process" outlined in Article 32, Title 4, Subtitle 2 of the Code. The development review and approval process requires the developer to fulfill numerous requirements, including the preparation of a concept plan (§ 32-4-213), attendance at a concept plan conference (§ 32-4-216), a community input meeting about the proposed development (§ 32-4-217(d)(2)), the preparation of the development plan (§ 32-4-222 through § 32-4-224), preliminary review of the development plan by the Department of PAI (§ 32-4-225), review of the development plan by various county agencies (§ 32-4-226(b)), and, unless a limited exemption is granted (as it was here), a hearing officer's hearing, at which the hearing officer may impose conditions that must be satisfied to secure plan approval (§ 32-4-227 through §32-4-229).

The Development Review and Approval Process also requires review by the Baltimore County Design Review Panel "if it involves property located in a Design Review Area identified on the map adopted under § 32-4-204 of this subtitle." Code § 32-4-203(a)(1). The Pikesville Commercial Revitalization District, where the subject property is located, is one such area. Code § 32-4-204(c)(4). As part of its review, the Design Review Panel must "apply the policies in the Comprehensive Manual of Development Policies and in the Master Plan in assessing whether a proposed development" satisfies various criteria. Code § 32-4-203(c)(1)(i)-(v). If a hearing officer's hearing is not required, as was the case here, the Directors of the Department of Planning, the Department of PAI, and the

24

Department of Environmental Protection and Sustainability or their designees consider any recommendations of the Panel and may impose the recommendation as a condition of approval before either approval of a development plan or the issuance of a permit, whichever occurs first. Code § 32-4-203(l).

In this case, the Developer submitted a development plan for approval. The Department of PAI approved the development plan on January 25, 2021. According to Code § 32-3-401(a), (c)(1), a person aggrieved or feeling aggrieved by a decision of the Director of PAI may appeal to the Board of Appeals within thirty days after the "final action." *See also* Code App'x B, Rule 3.c ("All appeals to the Board of Appeals shall be made within thirty days from the date of the final action appealed, unless otherwise provided by the County Code."). The approval of the development plan was the "final action." *See* Code § 32-4-101(t). It is from this final action that an aggrieved party may appeal to the Board of Appeals.

The Developer suggests that the October 2018 letter constituted an "approval," "exemption," "other form of permission," or "adjudicatory order" under Charter § 602(a). We disagree with this interpretation. The letter was not an adjudicatory order, nor did it grant or deny an exemption. While the letter could be considered an approval or permission in the dictionary sense, it did not constitute approval or permission in the legal or "final" sense.

*Meadows of Greenspring Homeowners Ass'n, Inc. v. Foxleigh Enterprises, Inc.*, 133 Md. App. 510 (2000), is instructive. There, the developer, Foxleigh Enterprises, Inc. ("Foxleigh"), which had a prior plan approved fifteen years earlier by the County Review

25

Group ("CRG"), filed a request with the Baltimore County Development Review Committee ("DRC") to develop the same property. 133 Md. App. at 512. Foxleigh sought the DRC's agreement that "the [proposed] plan constitutes a refinement to [the] previously approved" plan, as opposed to a material change, which would require the plan to be assessed under the regulations for DRC review. *Id.* The DRC held a public meeting, after which Arnold Jablon, the director of the Department of Permits and Development Management (now the Department of PAI), issued a letter stating as follows:

> Pursuant to [a]rticle 25A, [s]ection 5(U) of the Annotated Code of Maryland, and as provided in [s]ection 602(d) of the Baltimore County Charter, and [s]ection 26–132 of the Baltimore County Code, this letter constitutes an administrative order and decision on the request for issuance, renewal, or modification of a license, permit, approval, exemption, waiver or other form of permission you filed with this department . . . .

> The DRC has, in fact, met in an open meeting on April 27, 1998, and determined that your project is a material change to the CRG. Please submit new plans, so a new CRG can be scheduled.

*Id.* at 513.

Neighboring property owners filed an appeal with the Board, but Foxleigh filed a motion to dismiss, arguing that Jablon's letter was not a final administrative action from which an appeal could be taken. *Id.* at 513–14. The Board agreed, reasoning that the letter was not a final action because the "CRG process provides for an appeal *at the time the plan is approved*, not the juncture at which [Foxleigh] is *advised to submit a plan*." *Id.* at 514 (emphasis added). The neighbors petitioned for judicial review, and the circuit court affirmed the Board's decision. *Id.*

26

On appeal, we concluded that Jablon's letter was not an "operative event" that determined whether Foxleigh's proposed plan would be granted a license or permit; nor did it determine the conditions or scope of that license or permit. *Id.* at 516. Rather, the letter merely informed Foxleigh that the proposed plan must be reviewed by CRG. *Id.* Accordingly, the letter was not a final, appealable decision. *Id.* at 518.

In resolving that case, we found *Art Wood v. Wiseburg*, 88 Md. App. 723 (1991), instructive. *Foxleigh*, 133 Md. App. at 516. In *Art Wood*, the CRG made comments on a proposed plan that essentially directed the developer to amend specific details of the plan. 88 Md. App. at 733. We held that the CRG's action was an appealable final action because the CRG "was not waiting for or seeking any 'additional information' before approving the plan." *Id.* at 733. Instead, "[a]ll that remained for the CRG to do . . . was to review the amended Plan to make certain that [the developer] had indeed complied with the agencies' and the CRG's directives." *Id.* at 733–34. In contrast to *Art Wood*, the CRG in *Foxleigh* needed additional information to begin the approval process. *Foxleigh*, 133 Md. App. at 516. Accordingly, we concluded in *Foxleigh* that there was no final action that could be appealed. *Id.*

Here, like in *Foxleigh*, there was still more to do before the development plan could be approved when the October 2018 letter was issued. As the letter stated, the Design Review Panel still had to review the development plan ("[B]e advised that this development site is within the Pikesville Commercial Design Review Panel Review Area and as such will need to be presented to the Panel for review and approval."). The letter also directed the Developer to contact the Zoning Review office "to confirm whether the determination

27

of a Planned Drive-In Cluster is within the spirit and intent of, or necessitates a change to, any existing zoning case rulings associated with the property."

The Developer relies on *Beth Tfiloh Congregation of Baltimore City, Inc. v. Glyndon Community Ass'n, Inc.*, 152 Md. App. 97 (2003), for the proposition that decisions made before the final action approving a development plan are sometimes appealable. In *Beth Tfiloh*, a congregation seeking to build a new school and synagogue applied to Baltimore County for an exemption from the full development process. 152 Md. App. at 101. The Department of Permits and Development Management ("PDM") denied the exemption via a letter. *Id.* at 101, 104. The congregation appealed to the Board, which reversed PDM's decision and granted the exemption. *Id.* at 101. The community association appealed to the circuit court, which ruled that "PDM's denial of the exemption was not an operative event which would determine . . . whether [the congregation's] proposed plan would be granted a license or permit." *Id.* at 102. As such, the congregation "could not appeal from the PDM's decision to deny the exemption." *Id.*

On appeal, this Court reversed, recognizing that Article 25(A), section 5(U) (the predecessor to LG § 10-305) "allow[ed] the Board to hear appeals from the 'denial . . . of any exemption . . . .'" *Id.* at 115. We further explained that, "[w]hile the letter from PDM, arguably, was not an 'order,' it clearly advised that a final 'decision' had been made" to deny the application for exemption. *Id.* Accordingly, the decision contained in the letter was appealable to the Board. *Id.*

The Developer's reliance on *Beth Tfiloh* is misplaced. First, the instant case does not involve an appeal from a decision regarding an exemption. Second, the October 2018

28

letter purportedly approving the proposed project's designation as a Planned Drive-In Cluster was not an operative event contemplated by the language under LG § 10-305(b). As stated, the Code prescribed, and the letter clearly stated, that other agencies would need to review the development plan before final approval.

The Developer also relies on *National Institutes of Health Federal Credit Union v. Hawk*, 47 Md. App. 189 (1980), and *United Parcel Service, Inc. v. People's Counsel for Baltimore County*, 336 Md. 569 (1994), for the proposition that an agency communication that merely reiterates or reaffirms a prior final administrative decision or order is not appealable. This is because allowing appeals from such communications would result in a "continuing stream of correspondence, dialogue, and requests . . . with appropriate departmental authorities even on the most minute issues of contention with the ability to pursue a myriad of appeals ad infinitum." *Hawk*, 47 Md. App. at 195.

The Developer argues that the development plan approved by the Department of PAI in January 2021 simply reaffirmed the decision made by the Director of Planning in the October 2018 letter. They contend that the appellants cannot use the January 2021 plan approval to appeal the earlier 2018 decision, especially since the time to appeal that decision has already expired.

We need not delve into the facts and holdings of these cases because the Developer's argument rests on the incorrect premise that the October 2018 letter constituted a final, appealable event. As we explained above, it did not because (1) the Director of Planning had no authority to make that decision, and (2) even if she did, there was more to be done

before the development plan could be approved, which ultimately occurred in 2021. Therefore, the Developer's reliance on these cases is inapt.

### 3. The Letter Was Not Appealable Because It Was Not Made Known to Aggrieved Parties or Other Members of the Public.

In addition to the above, there is yet another reason the October 2018 letter was not appealable. "Implicit in the requirement that an appeal lies only from a final decision . . . are the correlative requirements that the aggrieved party know that the decision has been made and that the decision is final." *Crofton Partners v. Anne Arundel Cnty.*, 99 Md. App. 233, 243 (1994). We have said that beginning the time for appeal at the point where "all parties are clearly informed of the time running for an appeal" is the "better result." *Clarke v. Greenwell*, 73 Md. App. 446, 452–53 (1988).

Here, there was nothing in the record to suggest that the purported approval of the Planned Drive-In Cluster designation in the October 2018 letter was made known to the aggrieved parties. Without such notice, an aggrieved party would have no way of knowing when the appeal time started to run. If such determination in the letter were interpreted as an appealable event, then an agency could determine and approve such a designation without affording any notice whatsoever to the public. The result would vitiate an aggrieved party's ability to challenge the decision through a timely appeal, as happened here.

### CONCLUSION

We hold that the October 2018 letter from the Director of Planning was not an appealable decision because (1) the Director of Planning lacked the authority to determine

whether the proposed project met the criteria of Type 1 or Type 2 of the Planned Drive-In Cluster; (2) there was more to do before the development plan could be approved when the letter was issued; and (3) the purported designation of the proposed project as a Planned Drive-In Cluster was not made known to members of the public, including the aggrieved parties.

Accordingly, we reverse the circuit court's judgment. We remand the case for the court to order the Board to vacate the Board's decision approving the development plan and to remand the matter to the Board for the limited purpose of addressing the arguments regarding whether Bill 53-18 is legal, and, if it is, whether the proposed project meets the requirements of a Planned Drive-In Cluster.[10] As mentioned, the Board quashed Mr. Attar's subpoenas issued in connection with the special law argument because it determined that the October 2018 letter was a final decision that was not timely appealed. Given our disposition to the contrary, the parties may revisit the matter of subpoenas in connection with the special law claim on remand.

---

[10] As counsel for Mr. Attar indicated at the Board hearing,

> My client appealed in February of 2021 and raised two issues. The first issue was we asserted that [Bill] 53-18, . . . which is the ordinance that converted special exception use into a by right use for this project, was an illegal special law. That was our first argument.

> [W]e also argued, secondly, that even if it were not a special law, . . . the Planning staff determination in 2018, three years earlier, was incorrect because this application did not satisfy the requirement of the new definition [under the Bill].

> So, those two arguments. Illegal special law and they didn't satisfy the test for . . . drive-in cluster.

31

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED WITH INSTRUCTIONS TO VACATE THE DECISION OF THE BALTIMORE COUNTY BOARD OF APPEALS AND REMAND THE CASE TO THE BALTIMORE COUNTY BOARD OF APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**